# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 13-42925** |
| **RICHLAND RESOURCES CORP.** | § | |
| | § | **CHAPTER 11** |
| **DEBTOR.** | § | |
| | § | |

## AMENDED DISCLOSURE STATEMENT
## WITH RESPECT TO CHAPTER 11 TRUSTEE'S PROPOSED
## FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

Jason R. Searcy, Chapter 11 Trsutee (the "Trustee") for Richland Resources Corp. (the "Debtor"), submits this **AMENDED DISCLOSURE STATEMENT** (the "Disclosure Statement") in connection with the solicitation of acceptances of the Trustee's proposed **FIRST AMENDED PLAN OF REORGANIZATION** that is attached hereto as **Exhibit "A"** (the "Plan").

## 1.

## NOTICE TO HOLDERS OF CLAIMS AND EQUITY INTERESTS

The purpose of this Disclosure Statement is to provide you, as the holder of a claim against the Debtor, or as a shareholder of, partner in, or owner of an equity interest in the Debtor, with information to enable you to make a reasonably informed decision on the Plan before exercising your right to accept or reject the Plan.

You should read all of this Disclosure Statement before voting on the Plan. You are urged to consult with your own financial and other advisors in deciding whether to approve or reject the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to use any information concerning the Debtor or their businesses other than the information contained in this Disclosure Statement.

Under Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the record date for determining which holders of claims and equity interests may vote on the Plan is the date on which the Bankruptcy Court enters its order approving this Disclosure Statement (the "Voting Record Date"). EFFECTIVENESS OF THE PLAN UNDER SECTION 1129(a)(7) OF THE BANKRUPTCY REFORM ACT OF 1978, AS AMENDED (THE "BANKRUPTCY CODE"), REQUIRES THE APPROVAL OF THE PLAN BY THE HOLDERS OF AT LEAST TWO-

THIRDS IN AMOUNT AND MORE THAN HALF IN NUMBER OF ALLOWED CLAIMS VOTING ON THE PLAN FOR EACH OF THE IMPAIRED CLASSES, OR A FINDING BY THE BANKRUPTCY COURT THAT THE PLAN IS FAIR AND EQUITABLE AS TO THAT CLASS.

After carefully reviewing this Disclosure Statement, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed ballot; then return the ballot to the Trustee, at the address set forth on the ballot, by **5:00 p.m., central standard time, on or before** _____**.** You may also return your ballot by courier or fax by following the instructions on the ballot. **ANY BALLOTS RECEIVED BY THE TRUSTEE** *AFTER* **5:00 P.M., CENTRAL TIME, ON_____, WILL NOT BE COUNTED, UNLESS THIS DATE IS EXTENDED BY THE BANKRUPTCY COURT.**

The Bankruptcy Court has entered an order fixing_____**, central standard time,** in the Courtroom of the United States Bankruptcy Court, Plano, Texas,, as the date, time and place for a hearing on confirmation of the Plan (the "Confirmation Hearing"), and fixing_____ _____**by 5:00 p.m., central standard time,** as the time by which all objections to confirmation of the Plan must be filed with the Bankruptcy Court and served on Trustee.

Unless otherwise provided in the Plan, the closing of the transactions described in the Plan will occur on the Effective Date as defined in the Plan, unless the effectiveness of the Confirmation Order has been stayed or vacated by a court of appropriate jurisdiction, in which case this Effective Date shall be the later of the 30th business day after the entry of the Confirmation Order or such date thereafter when any stay of the effectiveness of the Confirmation Order has expired or otherwise terminated (the "Effective Date" of the Plan).

$$* \quad * \quad * \quad * \quad * \quad * \quad *$$

☞ **About this Disclosure Statement:**

- The statements contained in this Disclosure Statement are made as of the date that the Bankruptcy Court enters an order approving this Disclosure Statement, unless another time is specified in this Disclosure Statement. Neither the delivery of this Disclosure Statement nor any action taken in connection with the Plan implies that the information contained in this Disclosure Statement is correct as of any time after that date.

- Unless the context requires otherwise: (1) the gender (or lack of gender) of all words used in this Disclosure Statement includes the masculine, feminine and neuter; (2) references to articles and sections (other than in connection with the Bankruptcy Code, the Bankruptcy Rules, another specified law or regulation or another specified document) refer to the articles and sections of this Disclosure Statement; and (3) "including" means "including, without limitation".

- Many capitalized words used in this Disclosure Statement have been defined in the context of the provisions in which they first or most prominently appear within this Disclosure Statement. An index to those defined terms is included for your convenience at the front of this Disclosure Statement immediately after the table of contents. Any other capitalized terms used in this Disclosure Statement are intended to have the meanings ascribed to them in the Plan.

- You may not rely on this Disclosure Statement for any purpose other than to determine how to vote on the Plan. Nothing contained in this Disclosure Statement constitutes or will be deemed to be advice on the tax or other legal effects of the Plan on holders of claims or interests.

- Certain of the information contained in this Disclosure Statement is forward-looking. This Disclosure Statement contains estimates and assumptions that may prove not to have been accurate and financial projections that may be materially different from actual future experiences.

## 2.

## OVERVIEW OF THE PLAN

The Plan provides for the orderly liquidation of the assets of the Debtor and the payment of claims against the Debtor to the extent funds are available to do so in the manner and priority set out. This overview is qualified by reference to the Plan, a copy of which is attached as **Exhibit "A"**, and by the additional information included in this Disclosure Statement.

### A.     Debt and Equity

The Trustee believes that the Plan provides for (1) the treatment of all classes of claims that is in the best interests of creditors of the Debtor's estate and is fair and equitable to those creditors and (2) the fair and equitable treatment of its shareholders. The Trustee believes that the value of the Debtor's assets and its enterprise value are less than gross amount of the claims likely to be allowed against it. Accordingly, the Trustee does not believe that the shareholders will receive any distribution or value under the Plan.

### B.     Classification and Treatment Summary

Administrative expenses are not classified but are required to be paid by the Debtor. These expenses are expected to be approximately $600,000.

The following is a summary of the classification of claims and interests, and their treatment under the Plan.

3

| CLASSIFICATION | TREATMENT |
|---|---|
| **CLASS 1**<br>***Priority Claims***<br>Total Estimated Amount: $17,000 | *Unimpaired*<br><br>Will receive payment in full on or before the Effective Date<br>*Estimated Recovery:* 100% |
| **CLASS 2**<br>***Ad Valorem Tax Claims***<br>Total Estimated Amount: $1,000 | *Unimpaired*<br><br>The Class 2 Claims of the various taxing entities to whom ad valorem taxes are owed by Debtor shall retain their respective liens against Debtor's Property until satisfaction of their Allowed Secured Claim or Claims.<br>*Estimated Recovery:*   100% |
| **CLASS 3**<br>***Allowed Secured Claims of Ally Financial***<br>Total Estimated Amount: $90,000 | *Unimpaired*<br><br>Collateral has been delivered to Claim holder in full satisfaction of claim<br>*Estimated Recovery:*   100% |

4

| | |
|---|---|
| **CLASS 4**<br>***Allowed Secured Mineral Lien Claims***<br><br>$18,610,000 estimated. | *Impaired*<br><br>The Class 4 Claims shall be paid from the proceeds of the sale of the Debtor's Leon County leases and $1.5 million of the receivables from Steadfast Resources, LLC and Sun Delta, Inc. Any deficiency shall be an unsecured claim. (Assumes $2 million sale price for leases and does not differentiate between payment amounts on a well by well basis).<br><br>*Estimated Recovery: 18%* |
| **CLASS 5**<br><br>***Assumed Executory Contracts***<br><br>Total Estimated Amount: None.<br>(It is anticipated the purchasers of the Debtor's properties will pay any amounts required to cure any assumed Joint Operating Agreements) | *Unimpaired*<br><br>Will receive payment from third party purchasers of Debtor's properties assuming the Joint Operating Agreements<br><br>*Estimated Recovery:* 100% |
| **CLASS 6**<br><br>**General Unsecured Claims**<br><br>Total Estimated Amount:   $19,500,000 (includes anticipated deficiencies from Mineral Lien Claims) | *Impaired*<br><br>Will be paid pro-rata from the proceeds of Debtor's properties, assets and recoveries after payment in full to classes 1-3 and unclassified claims (assumes Goggans pays $8.25 million in full).<br><br>*Estimated Recovery:* 41% |
| **CLASS 7**<br><br>**Interest Owners** | *Impaired*<br><br>Will receive nothing unless Classes 1-6 are paid in full.<br><br>*Estimated Recover: 0* |

5

# 3.

# BACKGROUND OF THE CASE

## A.    Background of Debtor

Debtor is a corporation organized under the laws of the State of Nevada whose primary assets consists of interests in oil and gas properties.

Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on December 9, 2013 (the "Petition Date").   Jason R. Searcy was appointed as Chapter 11 Trustee in this case.

## B.    Factors Precipitating Commencement of the Case

Debtor obtained oil and gas leases covering approximately 1,700 acres in Leon County, Texas.  Having insufficient funds to drill and develop the properties itself, Debtor sold interests in the leases while agreeing to operate and develop the properties.  Debtor retained ownership of 16.66% of the working interest and sold 50% to Steadfast Resources, LLC ("Steadfast"), 16.66% to Sun Delta, Inc. ("Sun Delta"), and 16.66% to Amerril Energy, LLC ("Amerril").

Kenneth Goggans acted as President of Debtor and contemporaneously with the development of the oil and gas properties was operating other companies, including but not limited to Manek Energy Pressure Pumping, LLC ("Manek").  Manek's intended business was to operate as a contract service company providing frac services to Debtor and third parties. Manek's business was not successful and its proposed funding source, Amerril, withdrew its financial support. In an effort to continue Manek's business operations, Goggans caused funds paid by Steadfast, Amerril and Sun Delta to Debtor to be diverted to Manek.  Approximately $7 million intended for the payment of Richland's obligations in developing the Leon County properties was used in a failing effort to make Manek successful.  Manek subsequently filed for Chapter 7 bankruptcy.

In early 2013, Steadfast, Sun Delta and Amerril learned of the misappropriation of funds and confronted Goggans.  The result was that Richland transferred its 16.66% interest in the Leon County oil and gas leases to Steadfast, Sun Delta and Amerril and turned over operations for the properties to Amerril.

Steadfast thereafter filed suit against Richland, Goggans, and others in state court and obtained the appointment of a receiver over the Debtor's assets.  Shortly afer the receiver took possession of Debtor's books and records, Debtor filed this bankruptcy proceeding.

Debtor did not file the required Schedules and Statement of Financial Affairs in this proceeding.  The Trustee, using incomplete records, filed initial schedules and subsequently amended those schedules to be more accurate.  On he date the Trustee was appointed the Debtor

6

had no cash, no funds in the bank, one vehicle free of liens, and possible claims against various parties.

## C.    Proceedings in Case

### i.    *Appointment of Trustee.*

The United States Trustee filed a Motion for Appointment of Chapter 11 Trustee in this case and on February 19, 2014, Jason R. Searcy was appointed as Chapter 11 Trustee.

### ii.    *Appointment of Official Committee of Unsecured Creditors*

On January 23, 2014, the United States Trustee appointed an Official Unsecured Creditors' Committee consisting of C&J Spec-Rent Services, Inc./Cased Hole Solutions, Inc., Weatherford US, LP, Great White Pressure Control, LLC, Premier Flow Control, LLC, and Baker Hughes Oilfield Operations, Inc.  Subsequently, C&J Spec-Rent Services, Inc./Cased Hole Solutions, Inc. resigned from the Committee.

### iii.    *Settlement with Working Interest Owners*

The Trustee, with Committee support, negotiated a settlement of all claims the Debtor held against Steadfast, Sun Delta and Amerril.  This Settlement was approved by the Bankruptcy Court on February 20, 2015.  A complete copy of this Settlement may be reviewed in this proceeding under docket no. 261.  In summary, the Settlement called for (a) the re-conveyance to the Debtor's estate of the 16.66% interest in the Leon County oil and gas leases, (b) payment by Sun Delta to the estate of $172,000 for unpaid lease operating expenses, (c) payment by Steadfast to the estate of $1,700,000 for unpaid lease operating expenses and AFE's, (d) payment by Amerril to the estate of approximately $150,000 for production proceeds attributable to the 16.66% interest of the Debtor in the oil and gas leases, (5) payment by Amerril of $250,000 to the estate in settlement of a possible avoidable transfer; and (6) assignment to the estate of all claims and causes of action held by Steadfast, Sun Delta and Amerril against Goggans and related persons.

The property interest has been conveyed to the estate and Amerril has paid all amounts it owed under the Settlement.  Sun Delta has executed a promissory note for $172,000 to the estate due in September, 2015, and granted a deed of trust against its 16.66% interest in the oil and gas leases to secure payment.  Steadfast executed a promissory note for $1,700,000 to the estate which is finally due on March 26, 2016, and granted a deed of trust against its 50% interest in the oil and gas leases to secure payment.  Steadfast and Sun Delta have committed to pay the amounts due at the closing of any sale of their interests in the oil and gas properties if it occurs before maturity of their notes.

### iv.    *Possible Sale of Leases*

The Trustee, Sun Delta, Steadfast, and Amerril have agreed to sell their combined

7

interests in the oil and gas leases together. The parties believe that selling the entire working interest as a single unit will result in a substantially larger sales price. A prospective purchaser has been identified who is in the final stages of due diligence to purchase the property. Assuming this transaction is completed and approved by the Bankruptcy Court, it will result in payment to the estate of $2 million for its 16.66% interest and sufficient funds for Sun Delta and Steadfast to pay their amounts due under their respective notes. In the event this purchaser fails to complete the transaction, the owners will continue to market the properties for sale. There is no guarantee that the sale price will be $2 million in such event.

### v.    *Settlement with Goggans*

The Trustee, with Committee support, negotiated a Settlement of the estate's claims against Kenneth Goggans and related persons. This Settlement was approved by the Bankruptcy Court on October 14, 2014. A complete copy of the Settlement may be reviewed in this proceeding under docket no. 240. In summary, Goggans and related entities agreed to pay the estate $8.25 million over a 5 year term with collateral and an agreed judgment against Goggans in the event of default. Goggans has executed the settlement documents. Because of the precipitous downturn in the oil and gas industry, Goggans was unable to pay the initial cash amount from the settlement and a reduced amount for the initial payment was negotiated and the terms of payment modified without reducing the total amount due. Under the settlement, if payment is not made, a judgment against Goggans may be entered.

### vi.    *Receiver's Application for Administrative Expense Claim*

On August 28, 2014, Albert Black, the receiver appointed prior to the bankruptcy in the Steadfast litigation, filed an application for an administrative expense claim in the amount of $247,313.39. The Trustee and Committee opposed this application. The Bankruptcy Court entered an order on March 31, 2015, allowing the application in the amount of $171,255.20. This order has been appealed.

### vii.    *Retention of Professionals*

It is anticipated that each professional retained will file applications for compensation with the Bankruptcy Court to seek approval of reasonable fees and expenses.

Trustee filed an Application seeking to retain Searcy & Searcy & Associates, P.C. to act as bankruptcy counsel. An order approving the employment of the firm as counsel for Trustee was entered on March 19, 2014. Searcy & Searcy, P.C. will file a fee application(s) with the Bankruptcy Court for services rendered and expenses incurred.

Trustee sought to retain Gollob, Morgan and Peddy, P.C. to act as accountants for the Debtor's estate. An order approving the employment of the firm as accountants was entered on October 14, 2014.. Gollob, Morgan and Peddy, P.C. will file a fee application(s) with the

Bankruptcy Court for additional services rendered and expenses incurred.

The Committee filed an Application seeking to retain Ireland, Carroll and Kelley, P.C. to act as counsel for the Committee.   An order approving the employment of the firm as counsel for the Committee was entered on March 19, 2014.   Ireland, Carroll and Kelley, P.C., P.C. will file a fee application(s) with the Bankruptcy Court for services rendered and expenses incurred.

Trustee filed an Application to retain Bill Watson to act as auctioneer to sell a vehicle.  N order approving this employment was entered April 28, 2014. Mr. Watson has completed his service and been paid following court order.

Although not now anticipated, Trustee may seek to retain other professionals during its bankruptcy case by making application to the Bankruptcy Court.  If any other professionals are approved, they will also file fee applications with the Bankruptcy Court for allowance of fees and expenses.

vi.     *Plan and Disclosure Statement Matters.*

The Trustee  filed his Plan of Reorganization (the "Plan") under Chapter 11 of the United States Bankruptcy Code on July 14, 2015, and in connection therewith, the Trustee filed with the Bankruptcy Court this Disclosure Statement with respect to the Plan of Reorganization under Chapter 11 of the Bankruptcy Code.  In the Plan, the Trustee seeks to liquidate the Debtor's assets and use the proceed to pay all or a portion of its obligations. The Bankruptcy Court entered an order approving this Disclosure Statement and setting a deadline by which acceptances and rejections and objections to the Plan must be filed and served.  In that order, the Bankruptcy Court also scheduled the Confirmation Hearing to consider the Plan for _____, at _____. **M..**

**4.**

**THE PLAN**

**A.     Introduction**

A summary of the principal provisions of the **PLAN OF REORGANIZATION** and the treatment of classes of claims and equity interests is set forth below.  This summary is qualified by reference to the Plan, a copy of which is attached as **Exhibit "A"**.

The Plan was conceived by the Trustee as a fair and  equitable means for the sale of Debtor's assets in order to provide for the distribution of property and funds to creditors holding valid claims.  The Plan proposes to maximize recovery for the allowed claims against the estate.  The assets of the Debtor will be liquidated under the Plan in order to maximize the value of the Debtor's business operations. Therefore, the Plan provides the Debtors' creditors with distributions of property having a value not less than the amount that those holders would receive if the Debtor was to be liquidated

9

under Chapter 7 of the Bankruptcy Code.  The Trustee believes that the Plan is feasible and that the Plan provides for the greatest and earliest possible recoveries for the creditors of the Debtor.

**B.    Classification and Treatment of Claims**

Section 1123 of the Bankruptcy Code requires that a plan of reorganization classify the claims of a debtor's creditors and equity interest holders.  The Plan divides claims and equity interests into classes and sets forth the treatment afforded to each class.  Under the Plan, each claim or equity interest is either unimpaired or the holder of the claim or equity interest is to receive various types of consideration, depending on the nature of the claim or equity interest.

A claim is unimpaired under the Plan if the Plan (1) leaves unaltered the legal, equitable and contractual rights of the holder of the claim, (2) provides for cash payment of the full amount of the claim on the Effective Date of the Plan or (3) notwithstanding any contractual provision or law that entitles the holder of the claim to demand or receive accelerated payment after the occurrence of a default, cures the default, reinstates the maturity of the claim as it existed before the default, and compensates the holder of the claim for any damages incurred as a result of any reasonable reliance by the holder on any provision or law that entitles the holder of the claim to demand accelerated payment.

**The claims or interests that are or may be *impaired* under the Plan and therefore are or may be entitled to vote to accept or reject the Plan are *Classes  4,  6 and 7*.**

For the holder of a claim or equity interest to participate in the Plan and receive the treatment afforded to the applicable class, the holder's claim or equity interest must be "allowed".  A claim or interest will be allowed if it is filed or deemed filed, unless a timely objection to allowance of the claim or interest is made.

Generally, for a claim or equity interest to be filed, a proof of claim or proof of equity interest must be timely filed on behalf of the holder of the claim or equity interest with the Bankruptcy Court.  A claim or equity interest will also be deemed to be filed if (1) it is listed on the Schedules of Assets and Liabilities filed with the Bankruptcy Court, as amended (the "Debtor's Schedules"), unless it is listed as disputed, contingent or unliquidated or (2) in the case of an equity security holder, the holder's interest is reflected on the records of the issuer.

If an objection to a claim or interest is made, the Bankruptcy Court must make a determination with respect to allowance of that claim or interest.  Only holders of allowed claims and allowed interests are entitled to participate in and receive distributions in accordance with the Plan.

**C.    Classes of Claims in Plan.**  The following is a summary of the classes of creditors and equity interest holders of the Debtor under the Plan and the provisions made in the Plan for each class.

**Class 1**: **ALLOWED PRIORITY CLAIMS.**  This class consists of the Allowed Priority Claims as those terms are defined in Article II of the Plan, other than Allowed Claims for Administrative Expense or Ad Valorem Tax Claims.  Unless otherwise provided in the Plan, the holder of a Class 1 Allowed Priority Claim shall be paid in full plus 6% interest on the later of the Effective Date or the due date after court approval (if required by law), or paid on other agreed terms.

**Class 2**: **ALLOWED AD VALOREM TAX CLAIMS.**  This class consists of the Allowed Ad Valorem Tax Claims as those terms are defined in Article II of the Plan.  The Class 2 Ad Valorem Tax Claims which are secured by virtue of TEX. PROP. TAX CODE § 32.01, *et. seq.*, shall retain their liens against the property of the Debtor, including any liens for real estate or personal property taxes accruing after the filing of this bankruptcy for tax years through and ending on December 31, 2009, until payment in full of the applicable tax years. Each Allowed Ad Valorem Tax Claim shall be paid in full upon Closing of a sale of the Property.  Such liens shall be fully satisfied at Closing for any taxes that are due but the taxes shall be pro-rated for any ad valorem taxes against the Property that are not yet due and payable.  Ad Valorem Taxes assessed for the year 2010 and each subsequent year thereafter are to be timely paid when otherwise due and are subject to state court collection without recourse to the Bankruptcy Court after confirmation of this Plan

**Class 3**: **Allowed Secured Claims of Ally Financial.**  This class consists of the Allowed Secured Claims of Ally Financial who timely filed and perfected liens against two 2013 GMC vehicles of the Debtor. All of Debtors interest in the collateral was released to Ally Financial in full and complete payment of these claims.

**Class 4:**    **Allowed Secured Claims of Holders of Valid Mineral Liens.**    This class consists of the Allowed Secured Claims of the creditors who timely filed and perfected mineral liens against the oil and gas lease interests owned by the Debtor in Leon County, Texas. The property securing these claims was or will be sold during the administration of the Bankruptcy proceeding following motion, notice and entry of an order from the U. S. Bankruptcy Court. The proceeds of sale will be segregated and held in a separate account by Trustee. The liens of Allowed Claims in this class attach to the proceeds of sale and the claims will be paid pro-rata from such funds.

Mineral liens capture all amounts owed to the Debtor by third parties on the date their notice of intent to file lien was received pursuant to Chapter 56, Texas Property Code. The amounts to be received by the Debtor's estate from the Settlement With Working Interest Owners discussed above are subject to this provision. Of the settlement amounts paid or to be paid, the amounts which were due by property, and against which the lien claims may attach, are as follows:

17.6% to Allowed Class 4 Claims holding liens against the Beeler Prospect
28.8% to Allowed Class 4 Claims holding liens against the CW Brown #1-H
4.8% to Allowed Class 4 Claims holding liens against the Ellis 1-H
48.8% to Allowed Class 4 Claims holding liens against the John Beeler #1-H.

11

All interested persons shall have the right to object to the validity of any mineral lien on or before 60 days following the Effective Date of the Plan. Any objections not filed within that time period are barred. Because the validity of all mineral liens remain in issue, it is not possible to determine with any accuracy the exact amount to be recovered by each Allowed Class 4 Claim holder until such objection period has run and all objections finally determined..

The net funds received under the Settlement With Working Interest Owners, after payment of ad valorem taxes and allowed administrative expense claims, will be held in the segregated account and upon final determination of all lien claim objections shall distribute such funds to the lien claimants, pro rata, by well in the percentages set forth above.

Should the sale proceeds for the Property be insufficient to pay the Allowed Secured Claims secured by that Property, the deficiency amount shall be a Class 6 Claim.

**Class 5**: **ALLOWED CLAIMS OF ASSUMED EXECUTORY CONTRACT OR LEASE CLAIMANTS.** This class consists of the Allowed Claims of all persons holding executory contracts and/or lease agreements with the Debtor which were assumed or assumed and modified by the Debtor's estate including the Assumed Leases. Class 5 claims for Assumed Executory Contracts or Unexpired Leases shall be paid in accordance with the terms and conditions of each lease agreement, as modified, with Bankruptcy Court approval, or as set out herein. However, *unless otherwise agreed by the Debtor and the counter party* to any Assumed Agreement as more fully set out herein,

(a)      all cure payments that may be required by section 365(b)(1) of the Bankruptcy Code shall be made on or before the Effective Date, and

(b)      in the event of a dispute regarding the amount or timing of any cure payments, the ability of Reorganized Debtor to negotiate for and accept adequate assurance of future performance or any other matter pertaining to assumption, the dispute shall be resolved by the Bankruptcy Court and Reorganized Debtor shall negotiate for adequate assurance of future performance, if any, and accept such assurance as may be negotiated and or required by the Final Order resolving such dispute on the terms and conditions of such Final Order.

**Class 6**: **ALLOWED UNSECURED CREDITORS CLAIMS.**  This class consists of all Allowed General Unsecured Claims as those terms are defined in Article II of the Plan and shall include any and all claims not otherwise in Classes 1-5. After payment in full of all Allowed Unclassified Claims, and Allowed Claims in Classes 1, 2, 3, 4 and 5, holders of Allowed Unsecured Creditor Claims shall be paid pro rata, up to the full amount of their claim, from any Cash, settlement payments, recoveries, or proceeds of the sale of property held by the Debtor or the Creditor Trust.

.      **Class 7**: **ALLOWED CLAIMS OF INTEREST OWNERS.**  This class consists of all Allowed Claims of Interest Owners in the Debtor, including the shareholders of the Debtor. The Trustee believes that all of the Allowed Claims in Classes 1-6 will not be paid in full and, accordingly, the holders of Allowed Class 7 Claims will receive nothing of value. However, in the event that all

12

claims in Classes 1-6 are paid in full, the holders of Allowed Class 7 Claims shall retain their stock interests after the Effective Date of the Plan.

## D.    Means for Execution of the Plan

1.    Sale of Property.  This Plan contemplates that Trustee will sell the Property in a reasonable manner and use best efforts to obtain the highest price and consideration possible for such sale.  The sale shall be conducted in accordance with a Motion to Sell Under 11 U.S.C. § 363 when and if granted by the Bankruptcy Court.

2.    Settlements.  On or about February 10, 2015, the Bankruptcy Court approved a Compromise and Settlement Agreement by and between the Trustee, Sun Delta, Inc., Steadfast Resources, LLC, and Amerril Energy, LLC.  Pursuant to this agreement, Sun Delta, Inc. and Steadfast Resources, LLC, executed promissory notes payable to the Debtor's estate in the total combined amount of $1,872,000 due on or before March 26, 2016 (the notes have different maturities and payment dates but this is the final date payable).  The notes are secured by deeds of trust against the interests owned by Sun Delta, Inc. and Steadfast Resources, LLC, respectively, in the oil and gas leases covering property in Leon County, Texas, in which Debtor also owns an interest.  On or about October 16, 2014, the Bankruptcy Court entered its Order Granting Motion to Approve Settlement Agreement and Mutual Release with Kenneth Goggans and Goggans Enterprises.  In this compromise Kenneth Goggans agreed to pay the Debtor's estate $8,250,000 in installments over a 5 year period.

3.    Reorganized Debtor.  The Debtor shall not continue in existence as a corporation and shall be dissolved under applicable laws to the extent possible as soon as possible following the Effective Date.

4.    Vesting of Assets.  In the event all Allowed Unclassified Claims and Allowed Class 1, 2, 3, 4, 5 and 6 Claims are not paid in full on the Effective Date, except as otherwise provided in this Plan, the Property and assets of the Debtor's bankruptcy estate shall be transferred to and vest in the Creditor Trust on the Effective Date free and clear of all Claims, but subject to the obligations set forth in this Plan.   In the event all Allowed Unclassified Claims and Allowed Class 1, 2, 3, 4, 5 and 6 Claims are paid in full on the Effective Date, except as otherwise provided in this Plan, the Property and assets of the Debtor's bankruptcy estate shall re-vest in the Reorganized Debtor on the Effective Date free and clear of all Claims, but subject to the obligations set forth in this Plan, and any interest owners in the Debtor shall retain their respective ownership interests in the Debtor. In such event, commencing on the Effective Date, the Reorganized Debtor may conduct and change their businesses, without any supervision by the Bankruptcy Court or the office of the United States Trustee and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Chapter 11 Case and the Reorganized Debtor may use, operate and deal with their assets and property without any such supervision and free of any such restrictions.

5. <u>Distributions.</u>  The Creditor Trust or Reorganized Debtor may distribute available funds in accordance with the Plan.

6. <u>Creditor Trust.</u>

A.   In the event all Allowed Unclassified Claims and Allowed Class 1, 2, 3, 4, 5, and 6 Claims are not paid in full on the Effective Date, on the Effective Date the Creditor Trustee shall execute the Creditor Trust Agreement and the Richland Creditor Trust shall be formed.

B.   Except as otherwise provided herein, the Creditor Trustee (in his capacity as Creditor Trustee and not in his individual capacity) shall assume liability for and the obligations to make the distributions required to be made under the Plan and the Creditor Trust Agreement, but shall not otherwise assume liabilities of the Debtor.

C.   Creditors in Classes 1-6 shall create the Creditors Trust and designate, Jason R. Searcy as the initial Creditor Trustee for the purpose of receiving title to all Property and assets and funds the Debtor transfers to the Creditor Trust, including but not limited to, and except as provided in this Plan, all interests in real and personal property, any and all claims and causes of action, rights, claims, and demands against any third parties, investors, individuals, or insiders, that the Debtor owns or has an interest in or can ascertain any fashion, whether pre-petition or post-petition, including but not limited to actions under sections 544 through 550 of the Bankruptcy Code, to recover assets for the Creditor Trust and the benefit of the Creditors, and any other consideration to be received by the Creditors pursuant to the terms of the Plan. I the event the initial Creditor Trustee resigns or becomes unable to perform the duties of Creditor Trustee, the initial Creditor Trustee shall appoint a successor in writing.  In the event no successor Trustee is so appointed, upon application by any interested party, the Bankruptcy Court shall appoint a successor Trustee.

D.   The Creditor Trustee shall have all the power and authority to perform any acts set out in the Trust Agreement or allowed to a Trustee under the Texas Trust Act.

E.   The Creditor Trustee shall not be liable for actions taken or omitted in his capacity as the Creditor Trustee, except those acts arising out of his own fraud or willful misconduct.   The Creditor Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Creditor Trustee. Any indemnification claim of the Creditor Trustee shall be satisfied from the assets of the Creditor Trust.

F.   The Creditor Trust shall become effective upon the Effective Date.  Thereafter, the Creditor Trust shall remain and continue in full force and effect until the Property has been wholly converted to Cash or abandoned and all costs, expenses, and obligations incurred in administering the Creditor Trust have been fully paid and all remaining income and proceeds of the Trust Property have been distributed in payment of Allowed Claims and, if applicable, Allowed Interests pursuant to the provisions of the Plan.  The Creditor Trust will terminate at the end of five years from the

Effective Date; provided, that upon complete liquidation of the Trust Property and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Creditor Trust pursuant to the Plan prior to such date, the Creditor Trustee may, with approval of the Bankruptcy Court, sooner terminate the Creditor Trust; and provided further, that prior to the end of five years from the Effective Date the Creditor Trustee or any beneficiary of the Creditor Trust may move the Bankruptcy Court to extend the termination date of the Creditor Trust after notice to interested parties and an opportunity for hearing. Upon termination of the Creditor Trust, the Creditor Trustee will be forever discharged and released from all powers, duties, responsibilities and liabilities pursuant to the Creditor Trust.

G.   The Creditor Trust will have the right to retain the services of attorneys, accountants and other agents that, in the discretion of the Creditor Trustee, are necessary to assist the Creditor Trust in the performance of its duties. The fees and expenses of such professionals will be paid by the Creditor Trust in the ordinary course of business and will not be subject to the approval of the Bankruptcy Court. The Creditor Trustee shall be entitled to compensation for his services at a rate not to exceed $500 per hour and for reimbursement of expenses which shall be paid by the Creditor Trust in the ordinary course of business and will not be subject to the approval of the Bankruptcy Court, unless a Creditor in Classes 1-6 files an objection with the Bankruptcy Court, within 30 days of the fees and expenses being due and owing in the normal course of business, setting forth specific objections to the compensation requested.

H.   The Creditor Trust to be established for the benefit of Creditors is intended to qualify as a liquidating trust for federal income tax purposes. All items of income, deduction, credit or loss of the Creditor Trust shall be allocated for federal, state and local income tax purposes among the Holders of Allowed Claims and Interests.

## THE CREDITOR TRUST

The Creditor Trust shall exist after the Effective Date with all the powers of a trust under applicable Texas law. The Creditor Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on and after the Effective Date. After the Effective Date, the Creditor Trust will own the Trust Property and shall have the flexibility to conduct any operations necessary to liquidate the Trust Property and to enhance or preserve the value of the Trust property consistent with the expeditious and beneficial liquidation of such property. A copy of the proposed Trust Agreement is attached hereto as Exhibit B. As set out in Exhibit B, a Plan Administration Committee shall oversee the actions of the Trustee of the Creditor Trust. The Plan Administration Committee shall consist of current members of the Committee of Unsecured Creditors. The sum of $50,000.00 shall be paid to the Creditor Trust on or before the Effective Date to be used for initial operating costs of the trust.

15

**E.      Effect of Rejection by One or More Classes of Claims**

i       *Impaired Classes to Vote.*  Each impaired class of claims and interests will be entitled to vote separately to accept or reject the Plan.  A holder of a Disputed Claim (as defined below) that has not been temporarily allowed for purposes of voting on the Plan may vote that claim in an amount equal to the portion, if any, of the claim shown as fixed, liquidated and undisputed in the Debtors' Schedules.

ii       *Acceptance by Class of Creditors.*  A class will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the allowed claims or interests of the class actually voting on the Plan.

iii.      *Cramdown.*  If any impaired class fails to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

**F.      Provisions for Resolution and Treatment of Preferences, Fraudulent Conveyances and Disputed Claims**

i.       *Preferences and Fraudulent Conveyances.*  Under the Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain, with the exclusive right to enforce in its sole discretion, any and all causes of action of the Debtor, including all causes of action that the Debtor owns under Section 541 of the Bankruptcy Code or similar state laws or that may exist under Sections 510, 544 through 550 and 553 of the Bankruptcy Code or under similar state laws.  For disclosure purposes, all payments made within one year (if to insiders) or 90 days (if to non-insiders) prior to Debtor's filing for bankruptcy protection are subject to these provisions and Reorganized Debtor may pursue recovery of any or all of such payments.  All recoveries from such actions, net of costs and expenses, shall be paid in accordance with the provisions of this Plan.

ii.       *Objections to Claims.*  The Trustee or Committee shall have the sole authority to object and contest the allowance of any Claims filed with the Bankruptcy Court prior to the Effective Date.  Claims listed as disputed, contingent or unliquidated on the Schedules are considered contested Claims, except Claims otherwise treated by the Plan or previously allowed or disallowed by Final Order of the Bankruptcy Court.

iii.       *Disputed Claims Reserve.*  The distributions reserved for the holders of Disputed Claims will be held in trust by the Debtor for the benefit of the holders of Disputed Claims pursuant to the Plan (the "Disputed Claims Reserve").  The Disputed Claims Reserve will be held in trust by the Debtors for the benefit of the holders of Disputed Claims (pending a determination of the Disputed Claims).

A "Disputed Claim" is a claim against a Debtor (i) as to which an objection has been filed

on or before the deadline for objecting to a claim by the Trustee and which objection has not been withdrawn or resolved by entry of a final order of the Bankruptcy Court, (ii) that has been asserted in an amount greater than that listed in the Debtor's Schedules as liquidated and not disputed or contingent, or (iii) that the Debtor's Schedules list as contingent, unliquidated or disputed.

The Trustee shall retain the sole right to litigate Disputed Claims to determine the extent to which the Disputed Claim should be allowed. During the pendency of such litigation, the Creditor Trust shall escrow into a Disputed Claims Reserve such amounts as may be fixed by agreement, by provisional allowance in the Confirmation Order, or by other order of the Bankruptcy Court, unless other depository arrangements or terms are directed by order of the Bankruptcy Court.

When a Disputed Claim becomes an allowed claim, the distributions allowed for the allowed claim will be released from the Disputed Claims Reserve and delivered to the holder of the allowed claim. If a Disputed Claim is disallowed, the distributions provided for the Claim will be released to the Creditor Trust for use in its business operations.

All Cash held in the Disputed Claims Reserve and the reserve established for Administrative Expense Claims shall be invested in those investments described in section 345 of the Bankruptcy Code. The Creditor Trust shall be responsible for the cost and expenses incurred in connection with the maintenance of these reserves and the making of Distributions from the reserves after the Effective Date.

iv.     *Unclaimed Distributions:* Distributions to be made under the Plan to claimants holding allowed claims will be made by the Debtor by first class, United States mail, postage prepaid to (i) the latest mailing address set forth in a proof of claim filed with the Bankruptcy Court by or on behalf of the claimant or (ii) if a proof of claim has not been timely filed, the mailing address set forth in the Debtors' Schedules filed by the Debtors. The Debtor will not be required to make any other effort to locate or ascertain the address of the holder of any claim other than as specifically set out in the Plan.

If any person entitled to receive a distribution from the Debtor under the Plan does not come forward to collect a distribution or the distribution otherwise remains unclaimed as of one (1) year after the Effective Date, it will be retained by the Debtor as appropriate, and the affected claimant will have no further rights against the Debtor.

## G.     Claims Belonging to the Estate and Discharge of Claims Against the Debtors

i.     *Causes of Action.* All claims recoverable under Chapter 5 of the Bankruptcy Code, the Bankruptcy Code or similar state laws, all claims against third parties on account of any indebtedness, and all other claims owed to or in favor of Debtor to the extent not specifically compromised and released pursuant to this Plan or an agreement referred to or incorporated herein, shall be preserved and retained for enforcement by Creditor Trust after the Effective Date. In the event of conversion to a Chapter 7 proceeding, such claims shall be preserved and retained for

17

enforcement by the Chapter 7 Trustee, subject to applicable limitations periods.

      ii    ***Legally Binding Effect; Discharge of Claims and Interests:*** The provisions of the Plan will (i) bind all creditors and equity interest holders, whether or not they accept the Plan, and (ii) discharge the Debtors from all debts that arose before the Petition Date. In addition, the distributions of cash provided for under the Plan will be in exchange for and in complete satisfaction, discharge and release of all claims against and interests in the Debtors or any of its assets or properties, including any claim or interest accruing after the Petition Date and before the Effective Date. On and after the Effective Date, all holders of impaired claims and interests will be precluded from asserting any claim against the Reorganized Debtors or its assets or properties based on any transaction or other activity that occurred before the Petition Date. The distributions provided for creditors and equity interest holders will not be subject to any claim by another creditor or equity interest holder by reason of an assertion of a contractual right of subordination.

      iii.    ***List of Claims and Causes of Action Held by Debtor***

      a.    All rights for the enforcement of the settlement agreements with Sun Delta, Inc., Steadfast Resources, LLC, and Amerril Energy, LLC;

      b.    All rights for the enforcement of the settlement agreement with Kenneth Goggans et al

      c.    All rights to pursue all claims against the KG Released Parties (as defined in the Goggans Settlement) in the absence of performance by Goggans

      d.    All claims arising post-petition relating to the proposed sale of properties

## H.    Committee

The Committee shall be dissolved and terminated on the Effective Date or as soon thereafter as all pending objections to claims involving the Committee have been finally adjudicated.

## I.    Retention of Jurisdiction

      i.    ***Jurisdiction.*** Until this Chapter 11 case is closed, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including jurisdiction necessary to insure that the purpose and intent of the Plan are carried out and to hear and determine all claims that could have been brought before the entry of the Confirmation Order. The Bankruptcy Court will retain jurisdiction to hear and determine all claims against the Debtor and to enforce all causes of action that may exist on behalf of the Debtor. Nothing contained in the Plan will prevent the Debtor from taking such action as may be necessary in the enforcement of any cause of action that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

ii.    ***Examination of Claims.*** After the Confirmation Date, the Bankruptcy Court will further retain jurisdiction to decide disputes concerning the classification and allowance of the claim of any creditor and the re-examination of claims that have been allowed for the purposes of voting, and to determine such objections as may be filed to creditors' claims. The failure by the Debtor to object to, or to examine, any claim for the purposes of voting, will not be deemed a waiver of the right of the Debtor to object to, or to re-examine, the claim, in whole or in part.

iii.    ***Determination of Disputes.*** The Bankruptcy Court also will retain jurisdiction after the Confirmation Date to determine all questions and disputes regarding title to the assets of the Debtor's estate, disputes concerning the allowance of claims, and all causes of action, controversies, disputes or conflicts, whether or not subject to any pending action as of the Confirmation Date, for the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

iv.    ***Additional Purposes***. The Bankruptcy Court will retain jurisdiction for the following additional purposes after the Effective Date:

(a)    to modify this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(b)    to assure the performance by Reorganized Debtor of its obligations to make Distributions under this Plan;

(c)    to enforce and interpret the terms and conditions of this Plan;

(d)    to adjudicate matters arising in this bankruptcy case, including matters relating to the formulation and consummation of the Plan;

(e)    to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of Reorganized Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as this Bankruptcy Court may deem necessary;

(f)    to enter an order terminating this Chapter 11 Case;

(g)    to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan;

(h)    to allow applications for fees and expenses pursuant to section 503(b) of the Bankruptcy Code; and

(i)    to decide issues concerning federal tax reporting and withholding which arise in connection with the confirmation or consummation of this Plan.

**I.      Default under Plan**

   i.      *Asserting Default.* If the Debtor or Creditor Trust defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan, which documents will provide independent bases for relief), any creditor or party in interest desiring to assert the default may provide the Trustee with written notice of the alleged default.

   ii.      *Curing Default.*

   Except as otherwise set out herein, the Debtor or Creditor Trust shall have thirty (30) days from receipt of the written notice in which to cure an alleged breach or default under this Plan, including any default under any Related Document. The notice shall be delivered by *United States certified mail, postage prepaid, return receipt requested,* and by *regular, first class mail, postage prepaid,* addressed to the Trustee at the following address or at such other address as is provided in writing by Trustee:

>   Jason R. Searcy, Trustee
>   SEARCY & SEARCY, P.C.
>   P.O. Box 3929
>   Longview, Texas 75606
>   (903) 757-9559 Facsimile

   If the default is not cured, any Creditor or party in interest may thereafter file with the Bankruptcy Court and serve upon Trustee a motion to compel compliance with the applicable provision of the Plan. The Bankruptcy Court, upon finding a material default, shall issue such orders compelling compliance with the pertinent provisions of the Plan.

**J.      Miscellaneous Provisions**

   i.      *Compliance with Tax Requirements and Limits on Distribution.* In connection with the Plan, the Debtor and Creditor Trust will  comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan will be subject to those withholding and reporting requirements.

   ii.      *Amendment of the Plan.* The Plan may be amended by the Trustee or before or after the Effective Date as provided in Section 1127 of the Bankruptcy Code.

   iii.      *Revocation of the Plan.* The Trustee has reserved the right to revoke and withdraw the Plan at any time before the Confirmation Date.

   iv.      *Effect of Withdrawal or Revocation.* If the Trustee revokes or withdraws the Plan before the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan will be null and void.  In that event, nothing contained in the Plan or in this Disclosure

Statement will be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

v.    ***Due Authorization By Creditors.***  Each creditor who elects to participate in the distributions provided for in the Plan warrants that the creditor is authorized to accept in consideration of the claim against the Debtor the distributions provided for in the Plan and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the creditor under the Plan.

vi.    ***Filing of Additional Documentation.***  On or before the Effective Date, the Trustee will file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan.

vi.    ***Limitation of Liability in Connection with the Plan, Disclosure Statement and Related Documents and Related Indemnity.***

(a)    The Plan Participants (as defined hereafter) will neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement or the Confirmation Order, including solicitation of acceptances of the Plan; provided, however, the provisions of this Section will have no effect on the liability of any Plan Participant that would otherwise result from any such act or omission to the extent that such act or omission is determined in a final order to have constituted gross negligence or willful misconduct. "Plan Participants" means the Trustee,  and the employees and advising professionals of the Trustee in this proceeding..

(b)    The Creditor Trust will indemnify each Plan Participant, hold each Plan Participant harmless from, and reimburse each Plan Participant for, any and all losses, costs, expenses (including attorneys' fees and expenses), liabilities and damages sustained by a Plan Participant arising from any liability described in this Section.

x.    ***Section Headings.***  The section headings used in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

21

# 5.

## FEASIBILITY

THE FORECASTED FINANCIAL RESULTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE BASED ON ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY UNCERTAIN AND, THOUGH CONSIDERED REASONABLE BY THE TRUSTEE, ARE SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, LITIGATION AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES, ALL OF WHICH ARE DIFFICULT TO PREDICT AND MANY OF WHICH ARE BEYOND THE CONTROL OF THE TRUSTEE. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE FORECASTED RESULTS WILL BE REALIZED AND THAT ACTUAL RESULTS WILL NOT BE SIGNIFICANTLY HIGHER OR LOWER THAN FORECASTED. THE TRUSTEE MAY REVISE THESE ESTIMATES AND ASSUMPTIONS AT OR BEFORE THE CONFIRMATION HEARING ON THE PLAN.

A.      **General.**  As a condition to confirmation of the Plan, Section 1129 of the Bankruptcy Code requires that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor.  This Plan calls for the liquidation of Debtor's assets and the Trustee has made a  reasonable determination that it is in the best interests of all of the Debtors creditors that its assets be liquidated as a part of the Plan. Accordingly, this provision is not applicable to this Plan.

B.      **Operating Report.**  The Trustee has continued to operate Debtor's business during the pendency of this bankruptcy proceeding.  A true and correct copy of the most recent Monthly Operating Report filed by the Trustee in the bankruptcy action showing its post-petition operations is attached hereto as **Exhibit "C"** and incorporated herein for all purposes.

D.      **Sale of Oil and Gas Interests.**    The Debtor's estate owns a 16.66% interest in oil and gas leases covering approximately 1,700 acres in Leon County, Texas.  Trustee has had substantial negotiations with prospective purchasers and believes this interest has a market value of approximately $2 million.  No binding contract to purchase this interest exists as of the filing of this Disclosure Statement.  However, the Trustee is confident the interest will be sold within a reasonable time.  However, there is no certainty of this result.

E.      **Compromise with Kenneth Goggans.**    As set out previously herein, Kenneth Goggans has agreed to pay the estate $8.25 million over a 5 year period.  Trustee believes the settlement giving rise to this obligation was in the best interests of the estate and the Committee supported this agreement.  The Court approved the settlement after notice and hearing.  The settlement granted a lien against substantially all non-exempt assets of Goggans including equity interests in four small

oil field service companies. These collateral companies were highly leveraged but before the industry downturn appeared to have sufficient cash flow to pay the settlement amount. However, there is no assurance that Goggans will be able to pay the amount promised or that any collateral securing the payment will satisfy the obligation. The subsequent downturn in the energy industry has greatly reduced the income of the collateral entities and thereby greatly reduced the likelihood that this sum will be paid on the terms agreed. One of the companies acting as collateral has been placed into Chapter 11 bankruptcy. In the event Goggans defaults, the Creditors' Trust will receive an agreed judgment against Goggans and will pursue recovery to the full extent of legal remedies. Notwithstanding all possible safeguards, there is a high risk that this obligation will not be fully paid.

F. **Funds and Assets.**   Upon filing of this Disclosure Statement, the Debtor's estate consists of the following:

a.   Cash of approximately $425,000
b.   Notes Receivable from Steadfast and Sun Delta totaling $1,872,000
c.   16.66% interest in Leon County leases; estimated value $2 million
d.   Obligation of Ken Goggans for $8,250,000.

These, and any other assets of the estate, will be used to fund the Plan.

**6.**

## ALTERNATIVES TO CONFIRMATION
## AND CONSUMMATION OF PLAN

The Trustee believes that the Plan affords holders of claims and equity interests the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of those holders. If the Plan is not confirmed, however, the theoretical alternatives include: (1) continuation of the pending Chapter 11 case; (2) alternative plans of reorganization; or (3) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

### A.   Continuation of Case

If the Debtor remains in Chapter 11, the Trustee could continue to operate its business and manage its properties, but it would remain subject to the restrictions imposed by the Bankruptcy Code and to the stigma associated with bankruptcy proceedings.

### B.   Alternative Plans of Reorganization

If the Plan is not confirmed, any party in interest in the case could attempt to formulate and propose a different plan or plans.

## C.    Liquidation under Chapter 7

If no plan can be confirmed, the Debtor's Chapter 11 cases may be converted to cases under Chapter 7 of the Bankruptcy Code. In a Chapter 7 proceeding, a trustee or trustees would be elected or appointed to liquidate the assets of each Debtor. The proceeds of the liquidation would be distributed to the holders of claims against the Debtor in accordance with the priorities established by the Bankruptcy Code. Because the Debtor's business operations would cease as of the conversion of the case to Chapter 7, and the Debtor is the operator of most of its oil and gas properties, the oil and gas properties would be shut-in and production cease. This could threaten the viability of the wells and validity of the leases on which those wells are located. The Trustee believes that a sale of the Debtor's interest in these conditions would result in substantially less value than an orderly sale under the proposed Plan.

Under Chapter 7, a secured creditor whose claim is fully secured would be entitled to full payment, including interest, from the proceeds of the sale of its collateral. Unless its claim is nonrecourse, a secured creditor whose collateral is insufficient to pay its claim in full would be entitled to assert an unsecured claim for the deficiency. Claims entitled to priority under the Bankruptcy Code would be paid in full before any distribution to general unsecured creditors. Funds, if any remain, after payment of secured claims and priority claims would be distributed pro rata to general unsecured creditors.

The Trustee believes that liquidation under Chapter 7 would result in substantial diminution of the value of Debtor's estate because of additional administrative expenses involved in the appointment of trustees and attorneys, accountants and other professionals to assist the trustees. In particular, in a Chapter 7 scenario, it is likely, and presumed for purposes of this analysis, a trustee would proceed with liquidation of Debtor's assets under a forced sale scenario which would result in much lower offers.

The Plan proposed by the Trustee calls for the liquidation of all of the Debtor's assets under an orderly process. It also allows for the creation of the Creditors' Trust to continue to collect the obligations over a longer period of time that possible under a Chapter 7 proceeding which would likely result in a Chapter 7 Trustee severely discounting the amounts due for an early disposition of the proceeding. This, the Trustee believes, would seriously reduce the amount of recovery to creditors.

24

# 7.

## VOTING PROCEDURES AND REQUIREMENTS

**A.      Voting Procedures and Requirements**

The Debtor is seeking the acceptance of the Plan by all classes of impaired creditors and the holders of the Existing Equity Interests.

A ballot to be used to accept or reject the Plan has been enclosed with all copies of this Disclosure Statement mailed to holders of claims whose claims are impaired by provisions of the Plan. Accordingly, this Disclosure Statement (and the annexes, exhibit and schedules to this Disclosure Statement), together with the accompanying ballot and the related materials delivered together with this Disclosure Statement, are being furnished to all holders of an allowed claim or interest, and may not be relied on or used for any purpose other than to determine whether or not to vote to accept or reject the Plan.

Ballots with respect to the Plan will be accepted by the Trustee until **5:00 p.m., Central Standard Time**, on_____ (the "Voting Deadline"). The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtors' counsel no later than **5:00 p.m., Central Standard Time**, on_____ ___, at the following address:

> Searcy & Searcy, P.C.
> P. O. Box 3929
> Longview, Texas 75606
> Fax. (903) 757-9559

Except to the extent permitted by the Bankruptcy Court pursuant to Rule 3018 of the Bankruptcy Rules, ballots that are received after the Voting Deadline will not be accepted or used by the Debtor in connection with the Trustee's request for confirmation of the Plan.

After carefully reviewing this Disclosure Statement and its annexes, exhibits and schedules, please indicate your vote on the enclosed ballot, and return it to Searcy & Searcy, P.O., Box 3929, Longview, Texas 75606. In voting for or against the Plan, please use only the ballot sent to you with this Disclosure Statement (except as set forth below). Please complete and sign your ballot in accordance with the instructions set forth on the ballot.

Any ballots received that do not indicate either an acceptance or a rejection of the Plan or that indicate both an acceptance and rejection of the Plan will be deemed not to constitute a vote.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots or master

ballots will be determined by the Debtor in its sole discretion, whose determination will be final and binding.

This Disclosure Statement has been approved by order of the Bankruptcy Court, (the "Disclosure Statement Order"), as containing information of a kind and in sufficient detail to enable a hypothetical, reasonable person, typical of a holder of a claim or interest, to make an informed judgment whether to accept or reject the Plan. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute a ruling as to the fairness or merits of the Plan.

The Bankruptcy Court will hold a hearing on confirmation of the Plan, at which time the Bankruptcy Court will consider objections to confirmation, if any, commencing at _____. **m. Central Standard Time** on _____, in the United States Bankruptcy Court, Plano, Texas. The Confirmation Hearing may be adjourned from time to time without notice other than the announcement of an adjourned date at the Confirmation Hearing. Objections to confirmation of the Plan, if any, must be in writing and served and filed as described in this Disclosure Statement.

FOR YOUR BALLOT OR TO BE COUNTED, YOUR BALLOT MUST BE COMPLETED AS SET FORTH ABOVE AND RECEIVED BY THE VOTING DEADLINE (**5:00 P.M., CENTRAL STANDARD TIME, ON**_____). BALLOTS SHOULD BE DELIVERED OR MAILED TO: SEARCY& SEARCY, P.C.; P.O. BOX 3929, LONGVIEW, TEXAS 75606.

THE FOREGOING IS A SUMMARY. THIS DISCLOSURE STATEMENT AND THE ANNEXES, SCHEDULES AND EXHIBIT TO THIS DISCLOSURE STATEMENT SHOULD BE READ IN THEIR ENTIRETY BY ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS IN DETERMINING WHETHER TO ACCEPT OR REJECT THE PLAN.

## B.    Parties in Interest Entitled to Vote

Any holder of a claim against or equity interest in the Debtor whose claim or equity interest is impaired under the Plan and entitled to vote under the Plan, is entitled to vote to accept or reject the Plan if either (1) its claim or equity interest has been scheduled by the Debtor (and the claim or equity interest is not scheduled as disputed, contingent or unliquidated), or (2) it has timely filed a proof of claim or proof of equity interest. If the Debtor or Trustee has filed an objection with respect to a claim or equity interest, the holder of that claim or interest is not entitled to vote, unless the Bankruptcy Court, upon application of the holder, temporarily allows the claim or equity interest in an amount that the Bankruptcy Court deems proper for the purpose of accepting or rejecting the Plan. A vote may be disregarded if the Bankruptcy Court determines that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C.    Definition of Impairment

A class of claims or interests is impaired under a plan of reorganization unless, as set forth

in section 1124 of the Bankruptcy Code, with respect to each claim or interest of the class:

i.    the Plan leaves unaltered the legal, equitable, and contractual rights of the holder of the claim or interest; or

ii.    notwithstanding any contractual provisions or applicable laws that entitles the holder of a claim or interest to demand or receive accelerated payment of the claim or interest after the occurrence of a default, the Plan:

    a)    cures any default that occurred before or after the commencement of the case other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code;

    b)    reinstates the maturity of the claim or interest as the maturity existed before the default;

    c)    compensates the holder of the claim or interest for any damages incurred as a result of any reasonable reliance by the holder on those contractual provisions or applicable laws; and

    d)    does not otherwise alter the legal, equitable or contractual rights to which the holder is entitled with respect to the claim or interest.

**D.**    **Classes Impaired Under the Plan**

The only claims or interests that are or may be *impaired* **under the Plan and therefore are or may be entitled to vote** to accept or reject the Plan are *Classes 4, 6 and 7.*

**E.**    **Vote Required for Class Acceptance**

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in amount, and more than one-half in number, of the claims of that class that actually cast ballots for acceptance or rejection of the Plan. Thus, class acceptance occurs only if two-thirds in amount and a majority in number of the holders of claims voting cast their ballots in favor of acceptance.

**8.**

**CONFIRMATION OF THE PLAN**

**A.**    **Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold

27

a hearing on confirmation of the Plan.  By order of the Bankruptcy Court, the Confirmation Hearing on the Plan has been scheduled on _____, at ___ **p.m. Central Standard Time**, in the United States Bankruptcy Court, Plano, Texas.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan.  Any objection to confirmation of the Plan must be made in writing and filed in the Bankruptcy Court and served upon the parties entitled to service, together with proof of service on or before_____.

Objections to confirmation of the Plan are governed by Rule 9014 of the Bankruptcy Rules. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## B.      Requirements For Confirmation of The Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied.  If the requirements are satisfied, the Bankruptcy Court will enter an order confirming the Plan.  As set forth in Section 1129 of the Bankruptcy Code, these requirements are as follows:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The proponent of the plan complies with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

- The proponent of the plan has disclosed (1) the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan and the appointment to, or continuance in, the office of that individual, is consistent with the interests of creditors and equity security holders and with public policy, and (2) the identity of and the nature of any compensation for any insider that will be employed or retained by the reorganized debtor.

28

- Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or the rate change is expressly conditioned on that approval.

- With respect to each impaired class of claims or interests:

  •• each holder of a claim or interest of the class (1) has accepted the plan; or (2) will receive or retain under the plan on account of the claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that the holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the plan; or

  •• if Section 1111(b)(2) of the Bankruptcy Code applies to the claims of the class, the holder of a claim of the class will receive or retain under the plan on account of the claim property of a value, as of the effective date of the plan, that is not less than the value of the holder's interest in the estate's interest in the property that secures those claims.

- With respect to each class of claims or interests:

  •• the class has accepted the plan; or

  •• the class is not impaired under the plan;

- Except to the extent that the holder of a particular claim has agreed to a different treatment of the claim, the plan provides that:

  •• with respect to a claim of a kind specified in Section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of the claim will receive on account of the claim cash equal to the allowed amount of the claim;

  •• with respect to a class of claims of a kind specified in Section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, each holder of a claim of the class will receive (1) if the class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of the claim; or (2) if the class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of the claim; and

  •• with respect to a claim of a kind specified in Section 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of the claim

29

deferred cash payments, over a period not exceeding six years after the date of assessment of the claim, of a value, as of the effective date of the plan, equal to the allowed amount of the claim.

- If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless the liquidation or reorganization is proposed in the plan.

The Trustee believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that they have complied or will have complied with all of the requirements of Chapter 11, and that the proposal of the Plan is made in good faith.

The Trustee believes that the holders of all claims and equity interests impaired under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date in amounts not less than the amounts that they would receive if the Debtor was liquidated in a case under Chapter 7 of the Bankruptcy Code. At the confirmation hearing, the Bankruptcy Court will determine whether holders of claims and equity interests would receive greater distributions under the Plan than they would receive in a liquidation under Chapter 7.

The Trustee believes that confirmation of the Plan is not likely to be followed the need for further financial reorganization of the Debtor or any successor to the Debtors under the Plan.

## C. Cramdown

If any impaired class of claims or equity interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Trustee or if, as to each impaired class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class that does not accept the Plan receives less than is being received by a class of equal rank.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in Section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

### i. *Secured Claims*

- The plan provides that the holders of the claims retain the liens securing the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of the

claims, and each holder of a claim of the class will receive on account of the claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in the property;

- The plan provides for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims, free and clear of those liens, with those liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under the previous or following bullet point of this subparagraph; or

- The plan provides for the realization by the holders of the indubitable equivalent of the claims.

ii.   ***Unsecured Claims***

- The plan provides that each holder of a claim of the class receive or retain on account of the claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim; or

- The holder of any claim or interest that is junior to the claims of the class will not receive or retain under the plan on account of the junior claim or interest any property.

iii.   ***Interests***

- The plan provides that each holder of an interest of the class receive or retain on account of the interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, or the value of the interest; or

- The holder of any interest that is junior to the interests of the class will not receive or retain under the plan on account of the junior interest any property.

If one or more classes of impaired claims and equity interests reject the Plan, the Bankruptcy Court will determine at the confirmation hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of claims or equity interests.

In the Trustee's view, the Plan is confirmable under Section 1129(b) of the Bankruptcy Code, if necessary.

31

## 9.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**Notwithstanding any other provision herein, the Debtor failed to timely file its tax returns with the Internal Revenue Service and the Trustee has been unable to locate sufficient records to file a return at this time. The Trustee anticipates that because of the substantial losses in the Debtor's business that no income taxes will be due and owing. However, in the event this is not correct, the distributions called for herein to creditors may require amendment and modification or an amendment to the Plan proposed.**

**A.    General.**

The following is a general summary of certain material federal income tax consequences of the implementation of the Plan to the Debtor, creditors and shareholders. This summary does not discuss all aspects of federal income taxation that may be relevant to the Debtor, to a particular creditor or shareholder in light of its individual investment circumstances or to certain creditors or shareholders subject to special treatment under the federal income tax laws (for example, tax-exempt organizations, financial institutions, broker-dealers, life insurance companies, foreign corporations or individuals who are not citizens or residents of the United States). This summary also does not discuss any aspects of state, local or foreign taxation.

This summary is based upon the Internal Revenue Code of 1986, as amended (the "IRC"), the Treasury regulations (including temporary regulations) promulgated thereunder, judicial authorities and current administrative rulings, all as in effect on the date hereof and all of which are subject to change (possibly with retroactive effect) by legislation, administrative action or judicial decision. Moreover, due to a lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various tax consequences of the Plan as discussed herein. The Debtor has not requested a ruling from the Internal Revenue Service (the "IRS") with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto. There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

**FOR THE FOREGOING REASONS, CREDITORS AND OWNERS OF EQUITY INTERESTS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) TO THEM OF THE PLAN. THE DEBTORS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY HOLDERS OF CLAIMS OR SHAREHOLDERS, NOR ARE THE DEBTORS RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.**

**B.    Federal Income Tax Consequences to the Debtor**

i.      *Cancellation of Indebtedness*

Under general tax principles, the Debtor would realize cancellation of debt ("COD") income to the extent that the Debtors pay a creditor pursuant to the Plan an amount of consideration in respect of a claim against the Debtors that is worth less than the amount of such claim. For this purpose, the amount of consideration paid to a creditor generally would equal the amount of cash or the fair market value on the Effective Date of any other property paid to such creditor. Because the Debtor will be in a bankruptcy case at the time the COD income is realized, the Debtor will not be required to include COD income in gross income, but rather will be required to reduce certain of their tax attributes by the amount of COD income so excluded. Under the general rules of IRC section 108, the required attribute reduction would be applied first to reduce the Debtors' net operating loss carry forwards ("NOLs") to the extent of such NOLs, with any excess excluded COD income applied to reduce certain other tax attributes.

IRC section 108(b)(5) provides an election pursuant to which the Debtor can elect to apply the required attribute reduction first to reduce the basis of their depreciable property to the extent of such basis, with any excess applied next to reduce their NOLs and then certain other tax attributes. The Debtor has not yet determined whether they will make the election under IRC section 108(b)(5).

ii.     *Federal Income Tax Consequences to Holders of Claims and Holders of Equity Interests*

The federal income tax consequences of the implementation of the Plan to a holder of a claim will depend upon a number of factors, including whether such holder is deemed to have participated in an exchange for federal income tax purposes, and, if so, whether such exchange transaction constitutes a tax-free recapitalization or a taxable transaction; whether such holder's present debt claim constitutes a "security" for federal income tax purposes; the type of consideration received by such holder in exchange for its allowed claim; and whether such holder reports income on the accrual basis.

iii.    *Holders of Other Priority Claims and Certain General Unsecured Claims*

A holder whose claim is paid in full or otherwise discharged on the Effective Date will recognize gain or loss for federal income tax purposes in an amount equal to the difference between (a) the fair market value on the Effective Date of any property received by such holder in respect of its claim (excluding any property received in respect of a claim for accrued interest that had not been included in income) and (b) the holder's adjusted tax basis in the claim (other than any claim for such accrued interest). A holder's tax basis in property received in exchange for its claim will generally be equal to the fair market value of such property on the Effective Date. The holding period for any such property will begin on the day after the Effective Date.

Under the Plan, some property may be distributed or deemed distributed to certain holders of claims with respect to their claims for accrued interest. Holders of claims for accrued interest

33

which previously have not included such accrued interest in taxable income will be required to recognize ordinary income equal to the fair market value of the property received with respect to such claims for accrued interest. Holders of claims for accrued interest which have included such accrued interest in taxable income generally may take an ordinary deduction to the extent that such claim is not fully satisfied under the Plan (after allocating the distribution between principal and accrued interest), even if the underlying claim is held as a capital asset. The tax basis of the property received in exchange for claims for accrued interest will equal the fair market value of such property on the Effective Date, and the holding period for the property received in exchange for such claims will begin on the day after the Effective Date. The extent to which consideration distributable under the Plan is allocable to interest is not clear. Claimholders are advised to consult their own tax advisors to determine the amount, if any, of consideration received under the Plan that is allocable to interest.

The market discount provisions of the IRC may apply to holders of certain claims. In general, a debt obligation other than a debt obligation with a fixed maturity of one year or less that is acquired by a holder in the secondary market (or, in certain circumstances, upon original issuance) is a "Market Discount Bond" as to that holder if its stated redemption price at maturity (or, in the case of a debt obligation having original issue discount, the revised issue price) exceeds the tax basis of the debt obligation in the holder's hands immediately after its acquisition. However, a debt obligation will not be a "market discount bond" if such excess is less than a statutory *de minimis* amount. Gain recognized by a holder of a claim with respect to a "market discount bond" will generally be treated as ordinary interest income to the extent of the market discount accrued on such debt obligation during such holder's period of ownership, unless such holder elected to include accrued market discount in taxable income currently. A holder of a "market discount bond" that is required under the market discount rules of the IRC to defer deduction of all or a portion of the interest on indebtedness incurred or maintained to acquire or carry the debt obligation may be allowed to deduct such interest, in whole or in part, on disposition of such debt obligation.

iv.    *Withholding*

The Trustee will withhold all amounts required by law to be withheld from payments to holders of claims. In addition, holders of claims may be required to provide certain tax information to the Trustee.

## 10.

## RIGHT TO AMEND

Notwithstanding any provision of this Disclosure Statement, Trustee reserves the right pursuant to 11 U.S.C. § 1125 to amend the Plan following approval of this Disclosure Statement. Notice of any Plan amendments so made will be given in accordance with the applicable provisions of the Bankruptcy Code.

## 11.

## CONCLUSION

All holders of claims against and equity interests in the Debtor are urged to vote to accept the Plan and to evidence their acceptance by returning their ballots so that the ballots will be received by _____.

DATED: August _19_, 2015.

Respectfully submitted,

**RICHLAND RESOURCES CORP.**

By: _/S/ Jason R. Searcy_
   Chapter 11 Trustee